## QUESTIONS AS TO TITLE TO LAND.

[Superior Court of Cincinnati, General Term.]

JOSEPHINE BATES v. THE WINIFREDE COAL COMPANY.[*]

Decided, March 25, 1906.

*Title—Equitable Estate in Cestui—Power of Alienation—Successor to Lessee Attorns to Reversioner—Conveyance with Reservation of Life Estate—Not an Eviction—Lessee of Assignee a Surety—Assumpsit—Estoppel.*

1. A provision that the net income from land is in any event to go to the *cestui*, with power to collect and without any discretionary control in the trustee, conveys to the *cestui* an equitable estate, which under the rule in Shelley's case is an equitable fee with the power of appointment merged in the power of alienation.

2. A successor to the title of a lessee long subsequent to the execution of the power of alienation, by entering upon the estate and paying rent to the present claimant of title for a period of years, attorned to her as the reversioner, and is estopped from denying her title.

3. A subsequent conveyance by the claimant to her daughter, with a reservation of a life estate, was not an eviction, or a breach of covenant for quiet enjoyment.

4. Assumpsit being an action of an equitable character may be employed to recover installments of rent as they become due under a contract to pay by installments.

5. A lessee from an assignee is a surety, and the lessor has his remedy against either.

HOSEA, J.; FERRIS, J., and HOFFHEIMER, J., concur.

Reserved from special term.

This is an action in the nature of assumpsit to recover installments of rent, brought against an assignee (by mesne assignments) of the original lessee, of a lease of lands for ninety-nine (99) years, renewable forever. The material facts are as follows:

### (a). TITLE OF LESSEE.

1. In July, 1850, Catherine McFarland, owner in fee of the lands in question, deeded to John F. McFarland and his heirs forever upon the following trust:

*[*]Affirmed by the Supreme Court without report, *Winifrede Coal Co. v. Bates*, 74 Ohio State, ——.*

"In trust nevertheless to permit and suffer her son, the said Isaac McFarland, only for his sole use and personal benefit, to draw, receive, and collect the rents, issues and profits arising therefrom, he paying the taxes and repairs, during his natural life, and to and for no other purpose whatever; and for such other uses and purposes after his death, as he by deed or last will and testament duly executed shall or may direct and declare forever; and in default thereof, for the use and benefit of his heirs at law and their heirs forever; and in trust not to permit or suffer the said premises to be diverted from the uses and purposes intended, under any circumstances whatever."

2.   In October, 1876, John McFarland, trustee, together with Isaac McFarland, *cestui*, and his wife, Josephine, executed to Arthur W. Ross, his heirs, executors, administrators and assigns, for ninety-nine (99) years, renewable forever, an indenture of lease of the same lands, upon covenants for an annual rental of $1,500 until 1878, and thereafter of eighteen hundred ($1,800) dollars, payable in monthly installments of one hundred and fifty ($150) dollars; lessee paying all taxes and assessments, and to keep buildings insured for two thousand ($2,000) dollars, with covenants for forfeiture and re-entry upon ten (10) days default in rental or other covenants (Recorded in Lease Book 57, p. 68, Ham. Co. Rec.)

3.   Arthur Ross dying, a decree of the probate court, *in re* estate of same, was entered, directing the conveyance, by his administrator, of all real estate shown in the inventory of partnership assets, to the surviving partners; and thereupon John A. Porter, administrator, on January 25, 1883, conveyed to Addison Lysle and George Lysle, surviving partners, their heirs and assigns, by quit-claim deed, the property in question, said deed containing the following: "all of said property herein described is now conveyed subject to the terms, agreements, conditions, and stipulations in said leases as above contained, to which reference is hereby made"; together with a specific reference to the lease and the record of the same.

4.   On April 1, 1885, Addison and George Lysle entered into an agreement with the Winifrede Coal Company (the defendant here), to sell and convey several leasehold estates, including that in question, subject to all rentals and taxes to accrue there-

after; deeds to be "warranty deeds free from incumbrance except rents and taxes to accrue," as set forth; vendors to procure assent of lessors where leases require. On the same day the Lysles, with their wives, executed a general warrantee deed of the leasehold estate in question, concluding the description as follows:

"The property described above is held by the grantors under and by virtue of a certain lease made by John McFarland, trustee, and others, to Arthur W. Ross, of date the 19th day of October, 1876, for the term of ninety-nine (99) years renewable forever; said lease recorded in book 57, page· 68 of the Real Estate Records of Hamilton Co., Ohio, *and this conveyance is made subject to all the terms, stipulations, covenants and agreements of said lease, as therein contained, all of which the grantor assumes.*"

5. On June 16, 1902, the Winifrede Coal Company, by quit-claim deed, conveyed the property in question to John T. Nielsen, no reference being made to any covenants. It is admitted that Nielsen is an employe of defendant, and that no consideration was paid therefor. No rent has been paid by Nielsen, and plaintiff has refused to recognize him as a tenant.

#### (*b*). Title of Lessor.

1. Same as No. 1, *ante.*

2. In 1878, Isaac McFarland, "for the purpose of vesting the reversion in my (his) wife, to take effect upon my (his) death," quit-claimed to Henry M. Cist, who immediatey quit-claimed to Josephine, wife of Isaac McFarland, both these deeds referring to the trust deed to John McFarland, and reciting that they are intended to be in effect one instrument, "being executed in pursuance of the provision in said (trust) deed authorizing Isaac McFarland by his deed to direct and declare how the property may descend after his death—the purport of which being to convey in fee simple, said conveyance to take effect on the death of Isaac McFarland."

3. In 1882, Isaac McFarland died, leaving all his property by will to his wife, Josephine; a daughter Catherine (afterward Mrs. B. M. Cox), survived.

4. In 1893, Josephine Bates, the present plaintiff, conveyed to her daughter, Mrs. B. M. Cox, in fee, reserving a life estate to herself.

The defenses presented are under three subjects of attack, namely: the status of the lease, the plaintiff's title, and the obligations of the defendant as assignee.

It is claimed that in executing the lease, in 1876, Isaac McFarland had no estate in the land, and his wife Josephine no dower; and that, consequently, their signatures to the lease conveyed nothing. Further, that the estate of the trustee, John McFarland, being measured by the life of the trust, his power to lease was limited to the life of Isaac, unless the latter had executed his power of appointment and created further uses, which is denied; and that, in consequence, the lease expired with the life of Isaac. In the same connection it was urged that the trust was, in its essential nature, a "spendthrift trust"; and that the conveyances by Isaac to his wife Josephine, were ineffectual for any purpose, because Isaac had power only to "appoint and not to convey."

But this argument proceeds upon an assumption that the rights of Isaac McFarland were those derivable under a "spendthrift trust." On the contrary, since the net income of the land was to the *cestui* at all events, with power to collect, and without any discretionary control in the trustee, the right conveyed to Isaac was an equitable estate—the trustee holding the bare legal title. *Thornton* v. *Stanley,* 55 O. S., 199.

It was moreover, under the rule in Shelley's case (which is still in force in Ohio, except as to devises by will), an equitable freehold estate for life with remainder to his heirs, and therefore an equitable fee, subject to the power of appointment, which is practically merged in the power of alienation. *Brockschmidt* v. *Archer,* 64 O. S., 502.

The rule applies to all estates of freehold, whether legal or equitable. See Preston's statement of the rule (p. 271), adopted and approved by Chancellor Kent, 4. Kent's Com., 22.

The title of the lessee under the lease made by John McFarland, Isaac McFarland and Josephine, the wife of Isaac, in 1876, was therefore complete by the merger at its inception of

the legal and equitable titles and release of dower, vesting the perpetual use in the lessee.

The conveyance by Isaac to his wife through Cist, in 1878, if not a technically proper execution of the power of appointment, was nevertheless equivalent, in that it was a conveyance, *in futuro*, of the equitable fee; which title was confirmed by Isaac McFarland's will at his death in 1882; and this may be considered in equity as an execution of the power. *Burr* v. *Hatch*, 3 O., 529.

But this happened long prior to the defendant's succession to the lessee's title and possession under the lease, which occurred in 1885. By thus entering upon the estate and paying rent to plaintiff from 1885 to 1902, the defendant attorned to plaintiff as the reversioner, and is estopped to deny her title. Washburn on Real Property, par. 745; *Moore* v. *Beasley*, 3 O., 294; *Smith* v. *Harrison*, 42 O. S., 180; *Maxwell* v. *Griftner*, 11 C. C., 210.

The further claim that the subsequent conveyance by plaintiff to her daughter, subject to the lease with reservation of a life estate, was an eviction, is untenable. There was no disturbance of possession, or title of the lessee. The case of *Matthews* v. *Gas Co.*, cited from 179 Penn. St., 165, was where a lessee had been in default for rent for years; and the conveyance, to take effect *in praesenti*, was construed as an assertion of lessor's right to forfeit.

In the present case, the conveyance was made subject to the lease, which was duly recorded and notice to all concerned; and, the fact of occupancy and title of the tenant being known to grantee, who was bound thereby, it is not a breach of the covenant for quiet enjoyment by the tenant. *Lindley* v. *Dakin*, 13 Ind., 388.

It is claimed, further, that, as assignee of the lessee, the defendant was bound for the rent only during occupancy, and that, having a right to re-assign, its liability ceased when it assigned to Nielsen in 1902.

The general proposition, that the liability of a mere assignee rests upon privity of estate, and not on contract, and that privity of estate as a covenant real, binds the assignee of the term

only during his ownership and possession, is conceded. Washburn on Real Property, par. 682.

It is also true, as argued at the bar, that the statute of 32 Henry VIII., C. 34, which extended privity of contract from reversioner to reversioner, and gave the right to sue in covenant in actions by or against assignees, is not in force in Ohio.

But, nevertheless, its place is supplied by the provision of the code, authorizing suit by the real party in interest. *Masury* v. *Southworth*, 9 O. S., 340; *Smith* v. *Harrison*, 42 O. S., 180; *Hall* v. *Paine*, 14 O. S., 422.

The difficulties arising out of the rigidity of rules and forms of actions at law, *per se*, were the occasion for the adoption of our code of civil procedure; and the civil action of the code is designed for the application of both legal and equitable principles and relief. *Platt* v. *Calvin*, 50 O. S., 703. Consequently, while in a common law action such a covenant could not be enforced against an assignee, the code action for the purpose of enforcing the liability consequent upon notice, in equity, may be regarded as an equitable proceeding. Moreover, assumpsit is an action of an equitable character. 4 Cyc., 320; *Van Doren* v. *Robinson*, 16 N. J. Eq., 256; *Brewing Co.* v. *Holmes*, 69 L. J. Ch., 149. And can be employed to recover instalments as they become due upon a contract to pay a sum by installments. *Hamlin* v. *Rice*, 78 Ill., 442; *Tucker* v. *Randall*, 2 Mass., 283; *Fontaine* v. *Arresta*, 9 Fed. Cas., 4905.

In *Sutliff* v. *Atwood*, 15 O. S., 186, there is also contained an important exception to the general doctrine limiting the liability of assignees of lessees.

The court says (p. 196):

"The legal duty of an assignee arising from an assignment *executed without covenants on his part to perform the covenants of the lessee*, is limited to the time of the continuance of his interest. He is not chargeable for a breach of covenant happening after assignment, for the privity of estate is wanting. He is liable only in respect of his possession. His liability will not continue, though the assignment be made for the express purpose of getting rid of his responsibility."

The court proceeds to say further, that, in view of this very contingency, a court of equity, if called on to enforce specific

performance of an agreement of sale of the lease, would imply an agreement of indemnity in favor of the seller, "as though the purchaser *had agreed to assume all the lessee's burdens*" in taking over the lease, and would insert such covenant in the deed of transfer.   (This case has been cited with approval in many subsequent cases.)   In the present case, the parties' themselves applied the equity rule in a little different way, namely: the Lysles executed a warrantee deed of transfer with a covenant reading as follows:

"This conveyance is made *subject to all the terms, stipulations, covenants, and agreements of said lease, as therein contained, all of which the grantee assumes.*"

And this was assented to and confirmed by acceptance of the deed, and entering into possession of the property and complying with the covenants of the original lease, thus assumed, for seven years.   The signatures to the deed containing this covenant, by the grantee, was not necessary.   Acceptance and taking possession under it were sufficient to bind.

It was, in fact, a new contract, made and intended for the benefit of the successor in title of the reversioner, to whom the defendant attorned as landord; and the consideration was the warranty of title by the Lysles, which amounted to an independent covenant of seizin and enjoyment.

Thus the defendant "stepped into the lessee's shoes and assumed his obligations."   *Oil Co.* v. *Crawford,* 55 O. S., 161 (179); *Wetzell* v. *Richcreek,* 53 O. S., 62 (70); *Poe* v. *Dixon,* 60 O. S., 124 (134).

The principle upon which contracts made by two parties for the benefit of a third, are upheld in favor of said third party, is established in the United States by an overwhelming array of authorities.   9 Cyc.; 377, and cases cited.

These cases also uphold the right of the party benefited to sue in his own name; and this is especially true in the code states which require suit to be brought in the name of the real party in interest (*Id.*)

This is also settled law in Ohio—a few out of many cases being as follows: *Poe* v. *Dixon,* 60 O. S., 124; *Society* v. *Haynes,*

47 O. S., 423; *Emmett* v. *Brophy,* 42 O. S., 82; *Brewer* v. *Maurer,* 38 O. S., 543; *Burdick* v. *Cheadle,* 26 O. S., 393; *Thompson* v. *Thompson,* 4 O. S., 333.

"It was competent for the parties to introduce into the assignment any covenant or stipulation pertinent to the subect, which they may have agreed upon." *Wetzell* v. *Richcreek* (*supra*).

The covenant, here, bound the defendant to perform the obligations of the lessee, among which was the obligation to pay rent during the entire term. *Taylor* v. *DeBus,* 31 O. S., 468 (472).

The assignment by defendants, in view of these covenants, would not discharge them in respect of their liability. The defendant here occupies the relation of lessee to his assignee, and is thereby a surety. The lessor has his remedy against either. (Washburn on Real Property, par. 683; *McHenry* v. *Carson,* 41 O. S., 221; *Poe* v. *Dixon, supra*).

It is therefore unnecessary to consider the character of the assignment to Nielsen, under the circumstances of this case.

In accordance with the views above expressed, we must sustain the plaintiff's contention and give judgment accordingly.

Judgment for plaintiff with costs.

*C. Hammond Avery,* for plaintiff in error.

*Maxwell & Ramsey,* contra.